1

2

3

4

5

6

7

8               IN THE UNITED STATES DISTRICT COURT

9           FOR THE EASTERN DISTRICT OF CALIFORNIA

10   ANTHONY STEPHEN GONSALVES,

11             Petitioner,              No. CIV S-03-1091 MCE EFB P

12        vs.

13   TOM L. CAREY, Warden, et al.,

14             Respondents.            FINDINGS & RECOMMENDATIONS

15   _____/

16        Petitioner is a state prisoner proceeding *in propria persona* with an application for a writ

17   of habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner challenges a 2000 judgment of

18   conviction entered against him in the Placer County Superior Court on charges of corporal injury

19   to the parent of his child, assault, unlawful taking of a vehicle, first degree burglary, and

20   stalking.  He seeks relief on the grounds that: (1) the trial court committed evidentiary errors

21   which deprived him of his right to due process; (2) there was insufficient evidence produced at

22   trial to support his conviction on the burglary charge; (3) jury instruction error violated his right

23   to due process; and (4) his trial counsel rendered ineffective assistance.  Upon careful

24   consideration of the record and the applicable law, the undersigned recommends that petitioner's

25   application for habeas corpus relief be denied.

26   /////

1

# I.

# BACKGROUND[1]

Defendant had a three-year turbulent relationship with Jennifer C. (hereinafter Jennifer), during which they often lived together. Their child was born October 18, 1998.  At the time of the crimes in this case, Jennifer lived in a duplex in Roseville owned by her father.  Jennifer's parents had made it clear that defendant was not to live at the duplex.

This case arose from incidents on three days in 1999.  On August 3, 1999, defendant picked Jennifer up from work.  They got into an argument.  Defendant pinned her to the ground with her throat in his hand.  She struggled and was scratched.  Defendant said he would kill her.

Jennifer called her parents and told them she could not pick up the baby that night because she had tripped on the carpet and hit her head on the coffee table.  Jennifer told this story because she knew her father hated defendant "from day one" and did not want him "to over assume anything."  Jennifer's parents were concerned and went over to Jennifer's house.  She had a large bump on her head and scratches on her neck.  They called Jennifer's friend, Tara B. (hereinafter Tara), to find out if she knew anything.  Tara did not know about this incident, but she was not surprised.

The next day, Jennifer and defendant were in her car.  The phone rang and defendant would not give it to her.  He slapped her in the face when she reached for it.  Jennifer pulled over and told him to get out.  Defendant came by later and took the car.  The car belonged to Jennifer's father, Kevin C. (hereinafter Kevin).  Defendant had been told not to drive it.

Jennifer called Tara and told her she had a fight with defendant that got physical; he took her car so she needed someone to come get her.  Tara called Jennifer's parents and left a message that defendant had beat Jennifer again.  When Tara arrived, she saw Jennifer had scratches on her neck, a large knot on her head and a busted lip.  Jennifer told her she got the busted lip when defendant slapped her.

After receiving Tara's message, Kevin went immediately to Jennifer's.  He also called the police and met them there.  Jennifer's duplex was locked; the police went to open it to see if she was there.  A fireman entered the duplex through the bathroom

---

[1]  This statement of facts is taken from the March 4, 2002, opinion by the California Court of Appeal for the Third Appellate District (hereinafter Opinion), at pgs. 2-7, appended as Exhibit D to Respondents' Answer, filed on August 27, 2003.

window.  Kevin contacted Tara, who was with Jennifer and the baby.  She brought them to the duplex.  Jennifer's lip was swollen and split.  Jennifer was mad at her parents for calling the police.  She told them, "I'm dead."

At trial, Jennifer said defendant did not hit her; she got the scratches as she walked away from defendant and she had no idea from where the bump on her head came.  She got the split lip when she took a swing at defendant.  He put his hand up to block her and pushed her away.  She claimed she exaggerated the story to Tara and she threw the keys at defendant and told him to go.

On October 17, 1999, Jennifer was planning a birthday party for her daughter with her family.  That morning she heard a rattling at her door.  She went to the door and defendant came out of her bathroom.  He had entered through the bathroom window.  Defendant wanted to come to the party and they got into a fight.  Defendant yelled at Jennifer and threw a phone and hit her.  He kicked and broke the coffee table, flipped over the dining table, which hit the window sill, and punched holes in several doors.

Jennifer went into the bedroom and called her mother, Jeanne C. (hereafter Jeanne).  She told her mother, "He's here;" the door was locked and she was "scared to death."  Jeanne heard someone screaming and yelling and banging on the walls.  Jennifer was crying.  Jeanne sent Kevin over and called the police.

Kevin arrived and found the duplex trashed.  Jennifer appeared defeated.  She had bruises on her arms.  Jennifer moved home for several months and got a restraining order against defendant.  She would not move back to the duplex until a security system and motion detector lights were installed.

At trial, Jennifer testified defendant had spent the night of October 16 at the duplex with her permission.  They got into a fight.  Defendant called his new girlfriend, Danielle B. (hereafter Danielle) and asked her to pick him up.  He walked outside and Jennifer locked him out of the house.  With the locked door between them, they continued to argue.  Defendant then entered the duplex through the bathroom window.  They continued to fight.  Jennifer testified defendant did not hurt her.  She claimed Danielle was present during the fight.  Danielle corroborated this story and testified defendant did not try to hurt Jennifer.  The first time Jennifer told some of the new versions of her stories was when she spoke to the defense investigator.

Jennifer did not want to testify or make reports to the police.  In addition to minimizing the three incidents, she denied or could not recall prior instances of abuse by defendant.  She denied she had said what was in her declaration from the restraining order.  She testified she got the restraining order to get her parents off her

3

back.  She cared about defendant and believed he could change.

She had not spoken freely to the police officers because her parents were present.

An expert psychotherapist testified about the battered women's syndrome.  The cycle of violence is acute battering, followed by a honeymoon period, and then a tension-building period, followed by more abuse.  The victim becomes deflated and loses her sense of self and self-esteem.  She develops learned helplessness where she becomes so dependent on her abuser that she becomes fairly helpless.  The victim becomes isolated and fear becomes the normal way of being.  She accommodates that abuse by placating the batterer, and minimizing, denying and rationalizing the abuse.  The story often changes, first to minimize and then to deny.  Given hypothetical questions based on Jennifer's changed stories about the three incidents, the expert testified they were consistent with Jennifer suffering from abuse.

To show defendant's propensity for domestic violence and to rebut Jennifer's denials, evidence of prior instances of abuse was admitted.  In the summer of 1998, Jennifer was pregnant.  She had a bruise on her arm and told her sister defendant threw a beer at her.  Tara recalled the incident.  Several friends went on a barbecue to Sly Park.  Defendant and Jennifer fought and defendant threw beer cans at Jennifer, hitting her once.  He said, "I'm going to kill you, bitch."  As Jennifer was driving home, defendant was yelling at her that her baby would be messed up.  She got so upset she had to pull over and let someone else drive.  Brittny S. (hereafter Brittny) and Charlene H. were present at Sly Park and remembered defendant throwing beer cans, as well as mustard and catsup, at Jennifer.

In another altercation while Jennifer was pregnant, defendant pulled her by the hair.  Tara testified that after the baby was born, Jennifer had bruises on her legs.  Jennifer said defendant kicked her with steel-toed boots.  Brittny testified Jennifer called her about 10 times and told her defendant hit her.

Jennifer's sister, Kaitlin, witnessed an argument in the summer of 1999.  Defendant told Jennifer she better be quiet or she knew what would happen.  Defendant got in Jennifer's face and she was quiet.  Once while their parents were away, defendant came to the house.  Kaitlin locked all the doors.  Defendant pounded on the door, yelling, "I'm going to fucking kill you, bitch."

Carmelita Y. (hereafter Carmelita), Jennifer's roommate from September 1998 until March 1999, testified about a fight between defendant and Jennifer three weeks after Jennifer's baby was born.  Afterwards Jennifer told Carmelita that defendant hit her.  Defendant was incarcerated from November 24, 1998, until June

4

1999.  During that period he called Jennifer collect over five times a day; he wanted to know what she was doing.  The phone bill for three months was $3,200.  Carmelita testified that when Jennifer and defendant argued, defendant broke or threw things.

## II.

## ANALYSIS

**A.    Standards for a Writ of Habeas Corpus**

Federal habeas corpus relief is not available for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Under section 2254(d)(1), a state court decision is "contrary to" clearly established United States Supreme Court precedents "if it 'applies a rule that contradicts the governing law set forth in [Supreme Court] cases', or if it 'confronts a set of facts that are materially indistinguishable from a decision'" of the Supreme Court and nevertheless arrives at a different result. *Early v. Packer*, 573 U.S. 3, 8 (2002) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-406 (2000)).

Under the "unreasonable application" clause of section 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case. *Williams*, 529 U.S. at 413.  A federal habeas court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable."  Id. at 412; *see also Lockyer v. Andrade*, 538 U.S. 63, 75 (2003) (it is "not

5

1  enough that a federal habeas court, in its independent review of the legal question, is left with a

2  'firm conviction' that the state court was 'erroneous.'")

3      The court looks to the last reasoned state court decision as the basis for the state court

4  judgment. *Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002).  Where the state court reaches a

5  decision on the merits but provides no reasoning to support its conclusion, a federal habeas court

6  independently reviews the record to determine whether habeas corpus relief is available under

7  section 2254(d).  *Delgado v. Lewis*, 223 F.3d 976, 982 (9th Cir. 2000).

8  **B.    Petitioner's Claims**

9      **1.  Evidentiary Errors**

10      Petitioner claims that the trial court violated his right to due process when it admitted

11  evidence of prior uncharged incidents of domestic abuse to show that petitioner had a propensity

12  to commit violent acts.

13      This claim was rejected by the California Court of Appeal in a written decision on

14  petitioner's direct appeal, and by the California Supreme Court without further written analysis.

15  Answer, Exs. D, F.  The state appellate court rejected petitioner's claims with the following

16  reasoning:

17          Before trial the People moved in limine to admit certain evidence
            of prior domestic violence by defendant.  The People sought to
18          admit this evidence under Evidence Code section 1109 to show
            propensity and under Evidence Code section 1101, subdivision (b),
19          to show motive or intent.[2]  Defendant objected to some of this

20  _____

21          [2]  California Evidence Code section 1109 provides, in relevant part:

22          (a) Except as provided in subdivision (e), in a criminal action in
            which the defendant is accused of an offense involving domestic
23          violence, evidence of the defendant's commission of other
            domestic violence is not made inadmissible by Section 1101, if the
24          evidence is not inadmissible pursuant to Section 352.

25      California Evidence Code § 1101 provides:

26          (a) Except as provided in this section and in Sections 1102, 1103,

6

evidence on the basis it was hearsay, unreliable or more prejudicial than probative.  Most of this evidence was ruled admissible.[3]

Defendant contends it was error to admit this evidence.  First, he contends using evidence of prior uncharged acts to show his propensity to commit domestic violence under Evidence Code section 1109 denied him due process of law.  Defendant failed to object on this basis below and so has waived the objection.  (*People v. Burton* (1989) 48 Cal.3d 843, 862-863.)  In any event, this court rejected the contention in *People v. Johnson* (2000) 77 Cal.App.4th 410, 4160420.  (*Accord People v. Jennings* (2000) 81 Cal.App.4th 1301, 1310-1313; *People v. Brown* (2000) 77 Cal.App.4th 1324, 1332-1334; *People v. Hoover* (2000) 77 Cal.App.4th 1020, 1026-1029.)

Defendant offers no compelling reason to revisit the issue.

Next defendant contends the prior act evidence was more prejudicial than probative and should have been excluded under Evidence Code section 352.  He argues the purpose of Evidence Code section 1109 was accomplished by the charged offenses, which demonstrated a pattern of domestic violence.  He contends admission of evidence of other offenses was unfair piling on.

////

---

1108, and 1109, evidence of a person's character or a trait of his or her character (whether in the form of an opinion, evidence of reputation, or evidence of specific instances of his or her conduct) is inadmissible when offered to prove his or her conduct on a specified occasion.

(b) Nothing in this section prohibits the admission of evidence that a person committed a crime, civil wrong, or other act when relevant to prove some fact (such as motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, or whether a defendant in a prosecution for an unlawful sexual act or attempted unlawful sexual act did not reasonably and in good faith believe that the victim consented) other than his or her disposition to commit such an act.

(c) Nothing in this section affects the admissibility of evidence offered to support or attack the credibility of a witness.

[3]  The trial court determined it was unnecessary to instruct the jury on the limited use of the evidence under Evidence Code section 1101, subdivision (b) since it was admissible under Evidence Code section 1109.

7

Evidence Code section 352 provides:  "The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury."

"The two crucial components of [Evidence Code] section 352 are 'discretion,' because the trial court's resolution of such matters is entitled to deference, and 'undue prejudice,' because the ultimate object of the [Evidence Code] section 352 weighing process is a fair trial."  (*People v. Harris* (1998) 60 Cal.App.4th 727, 736.)

"A trial court may only exclude relevant evidence when 'its probative value is substantially outweighed" by the risk of undue prejudice.  (Evid. Code, § 352.)  '" A trial court's exercise of discretion will not be disturbed unless it appears that the resulting injury is sufficiently grave to manifest a miscarriage of justice. [Citation.]  In other words, discretion is abused only if the court exceeds the bounds of reason, all of the circumstances being considered. [Citation.]'"  [Citation.]"  (*People v. Chavez* (2000) 84 Cal.App.4th 25, 30.)

"'The prejudice which exclusion of evidence under Evidence Code section 352 is designed to avoid is not the prejudice or damage to a defense that naturally flows from relevant, highly probative evidence.' [Citations.]  'Rather, the statute uses the word in its etymological sense of "prejudging" a person or cause on the basis of extraneous factors. [Citation.]  [Citation.]"  (*People v. Zapien* (1993) 4 Cal.4th 929, 958.)

In *People v. Harris, supra*, 60 Cal.App.4th 727, the trial court admitted evidence of a 23-year-old attack of much greater brutality than the charged offenses.  This court found the admission prejudicial error because the evidence was inflammatory, confusing, remote, and not very probative.  (*Id.* at pp. 738-741.)  Here, in contrast, the evidence of defendant's prior assaults on Jennifer were no more inflammatory than the charged offenses, straightforward, recent, and highly probative in explaining the nature of the relationship and refuting her denials and minimizing. The trial court did not abuse its discretion in admitting this evidence.

Defendant contends the evidence should have been excluded because it consumed an undue amount of time.  Defendant failed to raise this objection below and so has waived it.  (Evid. Code, § 353.)  In any event, the testimony about prior acts of domestic violence was relatively short, especially in light of its probative value.

////

> Finally, defendant contends the trial court erroneously admitted hearsay statements by Jennifer.  Jennifer's sister, Kaitlin, testified Jennifer told her the bruise on her leg on October 17 was caused by defendant throwing a phone at her.  In her testimony Jennifer admitted defendant threw a phone, but declined to state he intentionally threw it at her.  "He – I don't know if he was throwing it at me or not, but he threw a phone, but we were both throwing everything."  Kaitlin's testimony was properly admitted as a prior inconsistent statement.  (Evid. Code, § 125.)

> Carmelita testified Jennifer told her defendant hit her during an argument in their apartment.  Initially, there was a question about the time period of this incident and whether defendant was incarcerated at the time.  The time period was cleared up by the stipulation as to defendant's period of incarceration.  Carmelita's testimony directly refuted Jennifer's denial that she sustained injuries during the time she lived with her.

> Defendant has failed to show any evidentiary error.

Opinion at 7-11.

As quoted above, the California Court of Appeal concluded that petitioner's due process claim was waived because of petitioner's failure to object to the admission of the prior crimes evidence on due process grounds in the trial court.  Respondents argue that the state court's finding of waiver constitutes a state procedural bar precluding this court from addressing the merits of this claim.  Answer at 13-14.

State courts may decline to review a claim based on a procedural default.  *Wainwright v. Sykes*, 433 U.S. 72 (1977).  As a general rule, a federal habeas court "'will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment.'"  *Calderon v. United States District Court (Bean)*, 96 F.3d 1126, 1129 (9th Cir. 1996) (quoting *Coleman v. Thompson*, 501 U.S. 722, 729 (1991)).  The state rule is only "adequate" if it is "firmly established and regularly followed."  *Id.*  (quoting *Ford v. Georgia*, 498 U.S. 411, 424 (1991)); *Bennett v. Mueller*, 322 F 3d 573, 583 (9th Cir. 2003) ("[t]o be deemed adequate, the state law ground for decision must be well-established and consistently applied.")  The state rule must also

be "independent" in that it is not "interwoven with the federal law." *Park v. California*, 202

F.3d 1146, 1152 (9th Cir. 2000) (quoting *Michigan v. Long*, 463 U.S. 1032, 1040-41 (1983)).

Even if the state rule is independent and adequate, the claims may be heard if the petitioner can

show:  (1) cause for the default and actual prejudice as a result of the alleged violation of federal

law; or (2) that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman*, 501 U.S. at 749-50.

Respondents have met their burden of adequately pleading an independent and adequate

state procedural ground as an affirmative defense.  *See Bennett*, 322 F.3d at 586.  Petitioner does

not deny that his trial counsel did not raise a contemporaneous objection on due process grounds

to the admission of evidence of petitioner's prior acts of misconduct.  Although the state

appellate court addressed petitioner's due process claim on the merits, it also expressly held that

the claim was waived on appeal because of defense counsel's failure to object.  Petitioner has

failed to meet his burden of asserting specific factual allegations that demonstrate the inadequacy

of California's contemporaneous-objection rule as unclear, inconsistently applied or not

well-established, either as a general rule or as applied to him.  *Bennett*  322 F.3d at 586;

*Melendez v. Pliler*, 288 F.3d 1120, 1124-26 (9th Cir. 2002).  Petitioner's claims therefore are

procedurally barred.  *See Coleman*, 501 U.S. at 747; *Harris v. Reed*, 489 U.S. 255, 264 n.10

(1989); *Paulino v. Castro*, 371 F.3d 1083, 1092-93 (9th Cir. 2004).

Petitioner has also failed to demonstrate that there was cause for his procedural default or

that a miscarriage of justice would result absent review of the claim by this court.  *See Coleman*,

501 U.S. at 748; *Vansickel v. White*, 166 F.3d 953, 957-58 (9th Cir. 1999).  However, for the

reasons discussed below, even if this claim was not procedurally barred, it lacks merit and must

be denied in any event.

The question of whether evidence of prior uncharged acts was properly admitted under

California law is not cognizable in this federal habeas corpus proceeding.  *Estelle v. McGuire*,

502 U.S. 62, 67 (1991).  The only question before this court is whether the trial court committed

10

an error that rendered the trial so arbitrary and fundamentally unfair that it violated federal due process.  *Id.  See also Jammal v. Van de Kamp*, 926 F.2d 918, 919 (9th Cir. 1991) ("the issue for us, always, is whether the state proceedings satisfied due process; the presence or absence of a state law violation is largely beside the point").  A writ of habeas corpus will be granted for an erroneous admission of evidence "only where the 'testimony is almost entirely unreliable and ... the factfinder and the adversary system will not be competent to uncover, recognize, and take due account of its shortcomings.'" *Mancuso v. Olivarez*, 292 F. 3d 939, 956 (9th Cir. 2002) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 899 (1983)).  Under Ninth Circuit law, the admission of "other acts" evidence violates due process only if there were no other permissible inferences the factfinder could have drawn from the evidence.  *McKinney v. Rees*, 993 F.2d 1378, 1381 (9th Cir. 1993) (question is "whether any inferences relevant to a fact of consequence may be drawn from each piece of the evidence, or whether they lead only to impermissible inferences about the defendant's character"); *Jammal*, 926 F.2d at 920 ("[e]vidence introduced by the prosecution will often raise more than one inference, some permissible, some not; we must rely on the jury to sort them out in light of the court's instructions").  *See also United States v. LeMay*, 260 F.3d 1018, 1027 (9th Cir. 2001) (evidence of prior similar crimes "will only sometimes violate the constitutional right to a fair trial, if it is of no relevance, or if its potential for prejudice far outweighs what little relevance it might have").  Even then, evidence must "be of such quality as necessarily prevents a fair trial." *Id.* (quoting *Kealohapauole v. Shimoda*, 800 F.2d 1463 (9th Cir. 1986)).

For purposes of AEDPA, petitioner must demonstrate that the California courts' rejection of his federal due process claim was contrary to or an unreasonable application of "clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1); *Lockyer*, 538 U.S. at 70-71.  In addition, in order to obtain habeas relief on the basis of evidentiary error, petitioner must show that the error was not harmless under *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993).  *Dillard v. Roe*, 244 F.3d 758, 767 n.7 (9th Cir. 2001).

1   Therefore, in order to grant relief, this court must find that the error had "'a substantial and

2   injurious effect' on the verdict." *Brecht*, 507 U.S. at 623.

3       Petitioner's trial was not rendered fundamentally unfair because of the admission of

4   evidence of petitioner's prior uncharged acts of violence against Jennifer.  As noted by the state

5   trial court, the other incidents were no more inflammatory than the circumstances of the charged

6   crimes – in fact, they were less inflammatory.  The evidence was not unreliable, and it concerned

7   events that were close in time to the charged acts.  In addition, evidence of uncharged acts

8   against Jennifer could have been admitted in this case to show petitioner's intent and motive.

9   These are rational inferences the jury could draw from the challenged evidence that are not

10  constitutionally impermissible.

11      The United States Supreme Court "has never expressly held that it violates due process to

12  admit other crimes evidence for the purpose of showing conduct in conformity therewith, or that

13  it violates due process to admit other crimes evidence for other purposes without an instruction

14  limiting the jury's consideration of the evidence to such purposes."  *Garceau v. Woodford*, 275

15  F.3d 769, 774 (9th Cir. 2001), *overruled on other grounds by Woodford v. Garceau*, 538 U.S.

16  202 (2003).  In fact, the Supreme Court has expressly left open this question.  *See Estelle v.*

17  *McGuire*, 502 U.S. at 75 n.5 ("Because we need not reach the issue, we express no opinion on

18  whether a state law would violate the Due Process Clause if it permitted the use of 'prior crimes'

19  evidence to show propensity to commit a charged crime").  *See also Alberni v. McDaniel*, 458

20  F.3d 860, 863-67 (9th Cir. 2006) (denying the petitioner's claim that the introduction of

21  propensity evidence violated his due process rights under the Fourteenth Amendment because

22  "the right [petitioner] asserts has not been clearly established by the Supreme Court, as required

23  by AEDPA").  Accordingly, the state court's decision with respect to this claim is not contrary to

24  United States Supreme Court precedent.

25      Further, any error in admitting this testimony did not have "a substantial and injurious

26  effect or influence in determining the jury's verdict." *Brecht,* 507 U.S. at 637.  *See also Penry v.*

1    *Johnson*, 532 U.S. 782, 793-96 (2001).  As described above, the evidence against petitioner was

2    strong.  Further, any threat of improper prejudice flowing from the testimony was mitigated by

3    the trial court's instruction to the jury that if they found petitioner committed prior acts of

4    domestic violence, that was not sufficient by itself to prove beyond a reasonable doubt that he

5    committed the charged offenses.  Clerk's Transcript on Appeal (CT) at 278.  The jury is

6    presumed to have followed this instruction.  *Old Chief v. United States*, 519 U.S. 172, 196-97

7    (1997); *United States v. Reed*, 147 F.3d 1178, 1180 (9th Cir. 1998).

8    For all of the foregoing reasons, petitioner is not entitled to relief on this claim.

9    ## 2.  Insufficient Evidence

10   Petitioner claims that the evidence introduced at his trial was insufficient to support his

11   conviction on the charge of burglary of the duplex, as charged in count 5 of the complaint.  *See*

12   CT at 41.  Petitioner argues that he was a "resident" of the duplex, and that he could not be found

13   guilty of "burglarizing his own house."  Memorandum attached to Pet. (hereinafter P&A) at 14.

14   Petitioner also claims that the evidence did not show that he "took anything that was not his" or

15   that he entered the duplex with the specific intent to violate the law.  *Id.* at 15.

16   This claim was rejected by the California Court of Appeal in a written decision on

17   petitioner's direct appeal, and by the California Supreme Court without comment on petition for

18   review.  Answer, Exs. D, F.  The California Court of Appeal explained its reasoning as follows:

19   Defendant contends there is insufficient evidence to sustain the
     conviction for burglary.  First, he contends one cannot burglarize
20   his own residence and the People failed to establish that defendant
     did not live at the duplex.  Jennifer testified defendant spent the
21   night of October 16 there with her permission and there was
     evidence he often stayed there and kept clothes and shaving
22   equipment there.

23   "A burglary remains an entry which invades a possessory right in a
     building.  And it still must be committed by a person who has no
24   right to be in the building." (*People v. Gauze* (1975) 15 Cal.3d
     709, 714.)  In *Gauze*, the court held defendant could not be
25   convicted of burglary for entering his own apartment to shoot his
     roommate.  "His entry into the apartment, even for a felonious
26   purpose, invaded no possessory right of habitation; only the entry

13

of an intruder could have done so.  More importantly, defendant had an absolute right to enter the apartment.  This right, unlike the store thief in [*People v.*] *Barry* [(1982) 94 Cal.481], did not derive from an implied invitation to the public to enter for legal purposes.  It was a personal right that could not be conditioned on the consent of defendant's roommates." (*People v. Gauze, supra*, at p. 714.)

In *People v. Frye* (1998) 18 Cal.4th 894, defendant argued there was insufficient evidence of burglary because he entered the cabin with the owner's consent.  The Supreme Court rejected this contention, finding a burglary conviction may be proper even when there has been consensual entry.  "'The law after *Gauze* is that one may be convicted of burglary even if he enters with consent, provided he does not have an unconditional possessory right to enter.' [Citations.]" (*Id.* at p. 954.)

While there was evidence defendant stayed at the duplex with Jennifer's permission, there was no evidence he had an unconditional possessory right to enter.  Rather, Jennifer's father, the owner of the duplex, had forbid defendant from staying there.  Further, Jennifer withdrew her consent by locking defendant out.  He entered through the bathroom window.  Since defendant had no absolute right to enter the duplex, he could be convicted of burglary if he entered with the requisite intent.

Defendant next contends there was insufficient evidence that he entered the duplex "with intent to commit grand or petit larceny or any felony . . . ." (§ 459.)  The prosecution argued defendant entered the duplex through the bathroom window with the intent to inflict corporal injury resulting in a traumatic condition (§ 273.5) on Jennifer.

When reviewing the sufficiency of the evidence to support a criminal conviction, the test is whether a reasonable trier of fact could have found the prosecution sustained its burden of proving the defendant guilty beyond a reasonable doubt.  (*People v. Johnson* (1980) 26 Cal.3d 557, 576.)  We review the entire record in the light most favorable to the prosecution and presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence.  (*Id.* at pp. 576, 578.)

"Because intent is rarely susceptible of direct proof, it may be inferred from all the facts and circumstances disclosed by the evidence.  [Citations.]  "Where the facts and circumstances of a particular case and the conduct of the defendant reasonably indicate his purpose in entering the premises is to commit larceny or any felony, the conviction may not be disturbed on appeal.' [Citation.]"

////

1
2
3
4
5
6
7

> Defendant contends it is mere conjecture what his intent was when he entered the duplex.  The evidence was that defendant and Jennifer were arguing that morning over whether defendant could attend his daughter's birthday party.  He threw a phone at her, causing a large bruise on her leg.  Defendant then broke several pieces of furniture and punched holes in doors.  The evidence amply demonstrated that defendant often reacted to fights with Jennifer by throwing things at her, or hitting, slapping or choking her.  According to the expert, defendant was acting in a cycle of power, abusing Jennifer to exert power over her and to feel a positive sense of self.  From this pattern of behavior, the jury could infer defendant entered the duplex with the intent to batter Jennifer yet again.  Substantial evidence supports the burglary conviction.

8  Opinion at 11-14.

9    The Due Process Clause of the Fourteenth Amendment "protects the accused against

10  conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the

11  crime with which he is charged."  *In re Winship*, 397 U.S. 358, 364 (1970).  There is sufficient

12  evidence to support a conviction if, "after viewing the evidence in the light most favorable to the

13  prosecution, any rational trier of fact could have found the essential elements of the crime

14  beyond a reasonable doubt."  *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).  *See also Prantil v.*

15  *California*, 843 F.2d 314, 316 (9th Cir. 1988) (*per curiam*).  "[T]he dispositive question under

16  *Jackson* is 'whether the record evidence could reasonably support a finding of guilt beyond a

17  reasonable doubt.'"  *Chein v. Shumsky*, 373 F.3d 978, 982 (9th Cir. 2004) (quoting *Jackson*, 443

18  U.S. at 318).  A petitioner in a federal habeas corpus proceeding "faces a heavy burden when

19  challenging the sufficiency of the evidence used to obtain a state conviction on federal due

20  process grounds."  *Juan H. v. Allen*, 408 F.3d 1262, 1274, 1275 & n.13 (9th Cir. 2005).  In order

21  to grant the writ, the habeas court must find that the decision of the state court reflected an

22  objectively unreasonable application of *Jackson* and *Winship* to the facts of the case.  *Id.*

23    The court must review the entire record when the sufficiency of the evidence is

24  challenged in habeas proceedings.  *Adamson v. Ricketts*, 758 F.2d 441, 448 n.11 (9th Cir. 1985),

25  *vacated on other grounds*, 789 F.2d 722 (9th Cir. 1986) (*en banc*), *rev'd*, 483 U.S. 1 (1987).  It is

26  the province of the jury to "resolve conflicts in the testimony, to weigh the evidence, and to draw

1   reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319.  If the trier

2   of fact could draw conflicting inferences from the evidence, the court in its review will assign

3   the inference that favors conviction. *McMillan v. Gomez*, 19 F.3d 465, 469 (9th Cir. 1994).  The

4   relevant inquiry is not whether the evidence excludes every hypothesis except guilt, but whether

5   the jury could reasonably arrive at its verdict. *United States v. Mares*, 940 F.2d 455, 458 (9th

6   Cir. 1991); *Roehler v. Borg*, 945 F.2d 303, 306 (9th Cir. 1991).  The federal habeas court

7   determines the sufficiency of the evidence in reference to the substantive elements of the

8   criminal offense as defined by state law. *Jackson*, 443 U.S. at 324 n.16; *Chein*, 373 F.3d at 983.

9          Viewing the evidence in the light most favorable to the verdict, the undersigned

10  concludes that there was sufficient evidence from which a reasonable trier of fact could have

11  found beyond a reasonable doubt that petitioner was guilty of burglary.  As the California Court

12  of Appeal explained, under state law petitioner could not be found guilty of burglary if he had an

13  unconditional possessory right to enter Jennifer's duplex.  The evidence introduced at trial

14  indicated that petitioner did not have an absolute right to enter the duplex and that permission to

15  enter had been withdrawn when Jennifer locked the doors.  The evidence also showed that

16  petitioner crawled through the bedroom window after a violent argument with Jennifer.  This

17  evidence was sufficient for a rational juror to find that petitioner committed burglary when he

18  entered the duplex without permission in order to commit a crime against Jennifer.  Because

19  there was substantial evidence presented at trial to support petitioner's conviction on the

20  burglary charge, the state court's analysis of this claim is not "objectively unreasonable." *See*

21  *Woodford v. Visciotti*, 537 U.S. 19, 25 (2002).  *See also* 28 U.S.C. § 2254(d)(1).  Accordingly,

22  petitioner is not entitled to habeas relief.

23  ////

24  ////

25  ////

26  ////

1     **3.  Jury Instruction Error**

2       Petitioner raises two claims of jury instruction error.  After setting forth the applicable

3 legal principles, the court will evaluate these claims in turn below.

4       **a.  Legal Standards**

5       In general, a challenge to jury instructions does not state a federal constitutional claim.

6 *See Middleton* v. Cupp, 768 F.2d 1083, 1085 (9th Cir. 1985) (citing *Engle v. Isaac*, 456 U.S.

7 107, 119 (1982)); *Gutierrez v. Griggs*, 695 F.2d 1195, 1197 (9th Cir. 1983).  In order to warrant

8 federal habeas relief, a challenged jury instruction "cannot be merely 'undesirable, erroneous, or

9 even "universally condemned,"' but must violate some due process right guaranteed by the

10 fourteenth amendment."  *Prantil*, 843 F.2d at 317 (quoting *Cupp v. Naughten*, 414 U.S. 141, 146

11 (1973)).  To prevail on such a claim petitioner must demonstrate "that an erroneous instruction

12 'so infected the entire trial that the resulting conviction violates due process.'"  *Prantil*, 843 F.2d

13 at 317 (quoting *Darnell v. Swinney*, 823 F.2d 299, 301 (9th Cir. 1987)).  In making its

14 determination, this court must evaluate the challenged jury instructions "'in the context of the

15 overall charge to the jury as a component of the entire trial process.'"  *Id.* (quoting *Bashor v.*

16 *Risley*, 730 F.2d 1228, 1239 (9th Cir. 1984)).  Further, in reviewing an allegedly ambiguous

17 instruction, the court "must inquire 'whether there is a reasonable likelihood that the jury has

18 applied the challenged instruction in a way' that violates the Constitution."  *Estelle*, 502 U.S. at

19 72 (quoting *Boyde v. California*, 494 U.S. 370, 380 (1990)).  Where the challenge is a failure to

20 give an instruction, the petitioner's burden is "especially heavy," because "[a]n omission, or an

21 incomplete instruction is less likely to be prejudicial than a misstatement of the law."  *Henderson*

22 *v. Kibbe*, 431 U.S. 145, 155 (1977).  *See also Villafuerte v. Stewart*, 111 F.3d 616, 624 (9th Cir.

23 1997).

24       **b.  Failure to Instruct that Petitioner Could not Burglarize his own House**

25       Petitioner's first jury instruction claim is that the trial court deprived him of a defense

26 when it failed to instruct the jury, *sua sponte,* that petitioner could not "burglarize his own

1    house."  P&A at 16.

2        This claim was rejected by the California Court of Appeal in a written decision on

3    petitioner's direct appeal, and by the California Supreme Court without comment on petition for

4    review.  Answer, Exs. D, F.  The state appellate court explained its analysis as follows:

5            Defendant contends the trial court erred in failing to instruct that
             one cannot burglarize his own residence or counsel was ineffective
6            in failing to request such an instruction.  "A party is not entitled to
             an instruction on a theory for which there is no supporting
7            evidence.  [Citation.]"  (*People v. Memro* (1995) 11 Cal.4th 786,
             868.)  As discussed above, there was no evidence defendant had an
8            unconditional possessory right to enter the duplex.  There was no
             instructional error as to burglary.

9

10   Opinion at 14.

11       "The general principle is well established that a criminal defendant is entitled to have a

12   jury instruction on any defense which provides a legal defense to the charge against him and

13   which has some foundation in the evidence, even though the evidence may be weak, insufficient,

14   inconsistent, or of doubtful credibility."  *United States v. Escobar de Bright*, 742 F.2d 1196,

15   1198 (9th Cir. 1984) (quoting *United States ex rel. Peery v. Sielaff*, 615 F.2d 402, 403 (7th Cir.

16   1979)).  *See also United States v. Sarno*, 73 F.3d 1470, 1484 (9th Cir. 1995).  Conversely, a

17   defendant is not entitled to a jury instruction on a defense theory unless there is some evidence

18   before the jury to support it.  *United States v. Johnson*, 459 F.3d 990, 992 (9th Cir. 2006)

19   (quoting *Escobar de Bright*, 742 F.2d at 1198) (in federal court, a criminal defendant is entitled

20   to a proposed jury instruction only "if it is supported by law and has some foundation in

21   evidence").  On direct appeal in federal court, "reversal will rarely be justified for failure to give

22   an instruction when no objection has been made in the trial court."  *Henderson*, 431 U.S. at 154.

23       As discussed above, the California Court of Appeal concluded that petitioner's proposed

24   defense had no foundation in the evidence because the facts demonstrated that petitioner did not

25   have a possessory right to enter the duplex.  This conclusion is a reasonable determination of the

26   facts in light of the evidence presented at trial.  Because petitioner's proposed defense was not

1   factually viable, petitioner was not entitled to a jury instruction supporting it.  Accordingly,

2   petitioner is not entitled to relief on this claim.

3                           c.  **Jury Instructions on Propensity Evidence**

4           Petitioner claims that two jury instructions given at his trial allowed him to be convicted

5   on lesser proof than beyond a reasonable doubt.  This claim was rejected by the California Court

6   of Appeal in a written decision on petitioner's direct appeal, and by the California Supreme

7   Court without comment on petition for review.  Answer, Exs. D, F.  The state appellate court

8   explained its analysis as follows:

9           The trial court instructed the jury with the 1999 revision of
            CALJIC No. 2.50.02, as follows:  "Evidence has been introduced
10          for the purpose of showing that the defendant engaged in an
            offense involving domestic violence on one or more occasions
11          other than that charged in the case.

12          [Defining "domestic violence" and "abuse"]

13          "If you find that the defendant committed a prior offense involving
            domestic violence, you may, but are not required to, infer that the
14          defendant had a disposition to commit the same or similar type of
            offenses.  If you find the defendant had this disposition, you may,
15          but are not required to, infer that he was likely to commit the crime
            or crimes of which he is accused.
16
            "However, if you find by a preponderance of the evidence that the
17          defendant committed a prior crime or crimes involving domestic
            violence, that is not sufficient by itself to prove beyond a
18          reasonable doubt that he committed the charged offenses.  The
            weight or significance, if any, are for you to decide.
19
            "Unless you are otherwise instructed, you must not consider this
20          evidence for any other purpose."

21          Defendant contends this instruction deprived him of due process
            by allowing the jury to convict him based on only a preponderance
22          of the evidence.  Defendant devotes much of his argument to a
            discussion of the deficiencies in the pre-1999 version of CALJIC
23          No. 2.50.02.  The 1999 version, given in this case, added the
            provision that a finding by a preponderance of the evidence that
24          the defendant had committed the prior crime or crimes was
            insufficient by itself to prove beyond a reasonable doubt that the
25          defendant committed the charged offense.  (*See People v. Younger*
            (2000) 84 Cal.App.4th 1360, 1380, fn. 2.)
26

                                              19

1            Even assuming the pre-1999 version of the instruction was
defective, any error has been cured by the revision, which

2            admonished the jury not to convict defendant based solely on his
past offenses. "This admonition helps assure that the defendant

3            will be tried and convicted for his present, not his past, offenses.
[Citations.]" (*People v. Falsetta* (1999) 21 Cal.4th 903, 923.)

4

5            In *People v. Brown, supra,* 77 Cal.App.4th 1324, the court upheld
the revised CALJIC No. 2.50.02 against constitutional challenge.

6            The court noted that in *People v. Falsetta, supra,* 21 Cal.4th at
page 924, the California Supreme Court stated the revised

7            instruction "adequately sets forth the controlling principles" for
use of disposition evidence. (*People v. Brown*, *supra*, at p. 1335.)

8            "We are aware the Supreme Court tempered its endorsement of the
1999 revised version of CALJIC No. 2.50.02, by indicating the
issue was not squarely presented in the case it was reviewing.

9            [Citation.]  However, even dictum from our Supreme Court is
considered 'highly persuasive.' [Citations.]  We believe it is

10           improbable that the California Supreme Court would suggest an
instruction 'adequately sets forth the controlling principles' for

11           considering other crimes evidence, and then find that same
instruction to be constitutionally defective." (*Id.* at p. 1336.)  We

12           agree.  Taken as a whole, the jury instructions adequately informed
the jury that while the prior acts of domestic violence need only be

13           proved by a preponderance of the evidence and such acts could be
used to infer a disposition to commit acts of domestic violence, the

14           jury had to find defendant committed the charged acts by proof
beyond a reasonable doubt and such finding could not be based

15           solely on defendant's prior acts.

16 Opinion at 14-16.

17        Due process "requires the prosecution to prove every element charged in a criminal

18 offense beyond a reasonable doubt." *Gibson v. Ortiz*, 387 F.3d 812, 820 (9th Cir. 2004) (citing

19 *In re Winship*, 397 U.S. 358, 364 (1970)).  If the jury is not properly instructed concerning the

20 presumption of innocence until proven guilty beyond a reasonable doubt, a denial of due process

21 results. *See Middleton v. McNeil*, 541 U.S. 433, 437 (2004) (*per curiam*).  "Any jury instruction

22 that 'reduce[s] the level of proof necessary for the Government to carry its burden ... is plainly

23 inconsistent with the constitutionally rooted presumption of innocence.'" *Gibson*, 387 F.3d at

24 820 (alterations in original) (quoting *Cool v. United States*, 409 U.S. 100, 104 (1972) (*per*

25 *curiam*)).

26 ////

In *Gibson*, the Court of Appeals for the Ninth Circuit found unconstitutional jury instructions (CALJIC Nos. 2.50.1 and 2.50.01) that, when given together, allowed a jury to: (1) find that a defendant had committed prior sexual offenses by a preponderance of the evidence; (2) infer from those past offenses a predilection for committing sexual offenses; and (3) further infer guilt of the charged offense based on those predilections. *Id.* at 822-23 ("the interplay of the two instructions allowed the jury to find that Gibson committed the uncharged sexual offenses by a preponderance of the evidence and thus to infer that he had committed the *charged* acts based upon facts found not beyond a reasonable doubt, but by a preponderance of the evidence") (emphasis in original).[4]  Even though the jury in *Gibson* was also given the standard "beyond a reasonable doubt" instruction, the Ninth Circuit found that this did not prevent the possibility of the jury finding the defendant guilty only on the basis of past offenses that had been established by a preponderance of the evidence.  *Id.*  The appellate court concluded that the challenged instructions, when given together, "[ran] directly contrary to *Winship's* maxim that a defendant may not be convicted except 'upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged.'"  *Id.* at 822.

---

[4]  The version of CALJIC No. 2.50.01 given to the jury in *Gibson* read as follows:

> If you find that the defendant committed a prior sexual offense, you may, but are not required to, infer that the defendant had a disposition to commit the same or similar type sexual offenses.  If you find that the defendant had this disposition, you may, but are not required to, infer that he was likely to commit and did commit the crime or crimes of which he is accused.

*Id.* at 821-22.

> The version of CALJIC No. 2.50.1 given to the *Gibson* jury read as follows:

> Within the meaning of the preceding instructions, the prosecution has the burden of proving by a preponderance of the evidence that a defendant committed sexual offenses and/or domestic violence other than those for which he is on trial.

*Id.* at 822.

21

1   Petitioner's jury received CALJIC No. 2.50.02, which is identical in all aspects to

2   CALJIC No. 2.50.01, except that it addresses prior acts of domestic violence.  In this case,

3   however, unlike in *Gibson,* the jury was also given the following instruction:  "if you find by a

4   preponderance of the evidence that the defendant committed a prior crime or crimes involving

5   domestic violence, that is not sufficient by itself to prove beyond a reasonable doubt that he

6   committed the charged offenses."  (CT at 278.)  With this instruction, petitioner's jurors were

7   explicitly told they could not find petitioner guilty based solely on his prior offenses.

8   Accordingly, the problem present in *Gibson* is not present in this case.

9   Even if the state court of appeal in this case erred in finding CALJIC No. 2.50.02

10   constitutional, this court cannot conclude that its decision was contrary to clearly established

11   Supreme Court precedent or objectively unreasonable.  *See* 28 U.S.C. § 2254(d); *Lockyer*, 538

12   U.S. at 74-75.  Accordingly, petitioner is not entitled to relief on this claim.

13       **4.  Ineffective Assistance of Trial Counsel**

14   Petitioner claims that his trial attorney rendered ineffective assistance when he failed to

15   request a jury instruction to the effect that petitioner "could not burglarize his own residence,"

16   and when he failed to object to the admission of other crimes evidence on due process grounds.

17   The Sixth Amendment guarantees the effective assistance of counsel.  The United States

18   Supreme Court set forth the test for demonstrating ineffective assistance of counsel in *Strickland*

19   *v. Washington*, 466 U.S. 668 (1984).  To support a claim of ineffective assistance of counsel, a

20   petitioner must first show that, considering all the circumstances, counsel's performance fell

21   below an objective standard of reasonableness.  *Id.* at  687-88.  After a petitioner identifies the

22   acts or omissions that are alleged not to have been the result of reasonable professional

23   judgment, the court must determine whether, in light of all the circumstances, the identified acts

24   or omissions were outside the wide range of professionally competent assistance.  *Id.* at 690;

25   *Wiggins v. Smith*, 539 U.S. 510, 521 (2003).  Second, a petitioner must establish that he was

26   prejudiced by counsel's deficient performance.  *Strickland*, 466 U.S. at 693-94.  Prejudice is

1  found where "there is a reasonable probability that, but for counsel's unprofessional errors, the

2  result of the proceeding would have been different." *Id.* at 694.  A reasonable probability is "a

3  probability sufficient to undermine confidence in the outcome." *Id.  See also Williams*, 529 U.S.

4  at 391-92; *Laboa v. Calderon*, 224 F.3d 972, 981 (9th Cir. 2000).  A reviewing court "need not

5  determine whether counsel's performance was deficient before examining the prejudice suffered

6  by the defendant as a result of the alleged deficiencies . . . .  If it is easier to dispose of an

7  ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be

8  followed." *Pizzuto v. Arave*, 280 F.3d 949, 955 (9th Cir. 2002) (quoting *Strickland*, 466 U.S. at

9  697).

10          As discussed above, the evidence at petitioner's trial did not support petitioner's defense

11  that he was not guilty of burglary because he had entered his own residence.  Petitioner's trial

12  counsel was not ineffective in failing to request a jury instruction in support of a meritless

13  defense.  *See Strickland*, 466 U.S. at 687-88 (requiring a showing of deficient performance as

14  well as prejudice).  Petitioner has also failed to demonstrate that his due process rights were

15  violated by the admission of evidence of prior bad acts or that the trial court would have

16  sustained an objection on these grounds.  An attorney's failure to make a meritless objection or

17  motion does not constitute ineffective assistance of counsel.  *Jones v. Smith*, 231 F.3d 1227,

18  1239 n. 8 (9th Cir.2000) (citing *Boag v. Raines*, 769 F.2d 1341, 1344 (9th Cir.1985)).  *See also*

19  *Rupe v. Wood*, 93 F.3d 1434, 1445 (9th Cir.1996) ("the failure to take a futile action can never be

20  deficient performance").

21          For all of the foregoing reasons, IT IS HEREBY RECOMMENDED that petitioner's

22  application for a writ of habeas corpus be denied.

23          These findings and recommendations are submitted to the United States District Judge

24  assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty days

25  after being served with these findings and recommendations, any party may file written

26  objections with the court and serve a copy on all parties.  Such a document should be captioned

23

"Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

DATED:  January 17, 2007.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE